**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

BOUNKIENG S.,

                                                    Civil No. 26-1830 (JRT/EMB)
                        Petitioner,

v.

KRISTI NOEM, *Secretary, U.S. Department*
*of Homeland Security*;

                                            **MEMORANDUM OPINION AND ORDER**
TODD M. LYONS, *Acting Director of*         **GRANTING PETITION FOR WRIT OF**
*Immigration and Customs Enforcement*;             **HABEAS CORPUS**
and

DAVID EASTERWOOD, *Acting Director, St.*
*Paul Field Office, Immigration and*
*Customs Enforcement*,

                        Respondents.

Daniel P. Suitor, **DANIEL P. SUITOR, PLLC**, 331 Second Avenue South, Suite
400-3099, Minneapolis, MN 55401, for Petitioner.

David W. Fuller and Trevor Brown, **UNITED STATES ATTORNEY'S OFFICE**,
300 South Fourth Street, Suite 600, Minneapolis, MN 55415 for
Respondents.

Petitioner Bounkieng S. was arrested and detained by United States Immigration

and Customs Enforcement ("ICE") on February 23, 2026.  Bounkieng S. petitions for a writ

of habeas corpus, arguing that he is being detained unlawfully.  Because the Court

concludes that his detention is unlawful, the Court will grant the petition and order that Petitioner be released from custody.

## BACKGROUND

Bounkieng S. is a citizen of Laos who entered the United States as a refugee in 1987. (Pet. Writ of Habeas Corpus ("Pet.") ¶ 1, Mar. 11, 2026, Docket No. 1.)  He subsequently became a lawful permanent resident.  (*Id*. ¶ 2.)  Following a criminal conviction, he was ordered removed in 2007.  (*Id.* ¶¶ 2, 26)  Petitioner was in detention for 90 days before being released on an order of supervision.  (*Id.*)  Petitioner has a lengthy criminal record, with convictions spanning from 2004 to 2021.  (*Id.* ¶ 25.)  Prior to his arrest, Petitioner never received notice that his supervised release status had been revoked.  (*Id.* ¶ 27.)

Respondents state that ICE revoked Petitioner's supervised release on February 20, 2026, due to "changed circumstances—namely, that the government of Laos had recently started to issue travel documents again[.]"  (Resp. Mem. at 2, Mar. 14, 2026, Docket No. 4; Decl. of William J. Robinson ("Robinson Decl.") ¶ 11, Ex. 5, Mar. 14, 2026, Docket No. 5.).  ICE arrested Petitioner on February 23, 2026.  (Pet. ¶ 5.)  Petitioner contends that "agents . . . did not present any form of warrant or other paperwork to Petitioner" (*id.*), but Respondents state that the arrest was effectuated pursuant to an I-200 administrative warrant (Robinson Decl. ¶ 12, Ex. 6).  Petitioner was "then afforded the opportunity to respond to the reasons for the revocation."  (Robinson Decl. ¶ 12.)

On March 11, 2026, Petitioner filed a petition for a writ of habeas corpus, alleging that his detention violated 8 U.S.C. § 1231, the Fourth and Fifth Amendments of the United States Constitution, and ICE's own regulations.

**DISCUSSION**

The parties agree that 8 U.S.C. § 1231 governs Petitioner's detention because Petitioner is subject to a final order for removal.  The parties' core dispute is whether ICE followed its own regulations in revoking Petitioner's supervised release, arresting, and detaining him.

Where a noncitizen is detained under 8 U.S.C. § 1231(a), the noncitizen's detention is governed by its implementing regulations at 8 C.F.R. § 241.  Under § 241.13, supervised release may be revoked in two circumstances: (1) if the individual violates release conditions, or (2) "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [individual] may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(1)–(2).  In either case—violation of supervised release or changed circumstances—the regulations require ICE to notify the noncitizen "of the reasons for revocation of his or her release" and to "conduct an initial informal interview promptly after [the noncitizen's] return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification."  8 C.F.R. § 241.13(i)(3).

It is well-established that "[a]gencies must follow their own regulations." *Saengnakhone S. v. Noem*, Civ. No. 25-4775, 2026 WL 34132, at *3 (D. Minn. Jan. 6, 2026)

-3-

(citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954)).  Here, Respondents concede that Petitioner's re-detention is governed by § 241.13, and that ICE is bound to follow that regulation.  ICE argues that it complied with § 241.13 in this case for three reasons: (1) ICE made its decision to revoke Petitioner's release three days before his arrest; (2) "the revocation decision was based on changed circumstances that led the agency to conclude there was a significant likelihood of removal in the reasonably foreseeable future"—specifically, "ICE's pursuit of a travel document to effectuate [Petitioner's] removal to Laos"; and (3) Petitioner was given an informal interview to respond to the reasons for the revocation.  (Resp. Mem. at 7.)

Petitioner bears the burden of showing that his detention is unlawful, *see Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025).  However, in this case, Respondents bear the burden under § 241.13 of showing that "changed circumstances" justified the revocation of release and Petitioner's detention.  *See Yee S. v. Bondi*, 806 F. Supp. 3d 894, 900 (D. Minn. 2025); *see also Holger P.A.P. v. Noem*, Civ. No. 26-571, 2026 WL 710663, at *2 (D. Minn. Mar. 13, 2026).

The Court concludes, on the record before it, that Respondents failed to follow their own procedures regarding the revocation of release, and that Petitioner's detention is therefore unlawful.  First, § 241.13(i)(3) states that "[u]pon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release."  Respondents did not provide such notice to Petitioner until after he was arrested and thus failed to follow

-4-

§ 241.13. (*See* Robinson Decl. ¶ 11, Ex. 5 (noting that the revocation notice was served on February 23, 2026, at ICE's field office following Petitioner's arrest).)   Second, Respondents have not adequately demonstrated that their decision to revoke Petitioner's release was based on "changed circumstances" indicating "that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  *See* 8 C.F.R. § 241.13(i)(2).  The only support Respondents provide for that determination are: (1) the Notice of Revocation of Release document itself, in which ICE checked boxes next to the statements, "Your release has been revoked pursuant to 8 C.F.R. § 241.13(i)," and "Circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future" (Robinson Decl. ¶ 11, Ex. 5); and (2) the contention that "the Government of Laos recently start[ed] to issue travel documents" in similar cases (Robinson Decl. ¶¶ 11, 13).  But the Court concludes that these vague, conclusory statements are insufficient to demonstrate that ICE's revocation of Petitioner's supervised release was justified by changed circumstances.

Nor is the Court persuaded by Respondents' assertion that "[o]n March 14, 2026, ERO St. Paul submitted a travel document request to ERO HQ" and "based on [Deportation Officer Robinson's] experience, the request should be approved soon." (Robinson Decl. ¶ 13).  These facts have no bearing on the lawfulness of Petitioner's detention.   ICE's own regulations—and, indeed, common sense—dictate that circumstances must have changed **before** the revocation of release in order for those

changed circumstances to justify the noncitizen's detention. In other words, ICE requesting travel documents for Petitioner after he had already been detained cannot provide a lawful rationale for his detention.

In sum, because the record demonstrates that ICE failed to follow its own procedures in revoking Petitioner's supervised release, the Court concludes that Petitioner's detention is unlawful. Accordingly, the Court will grant Bounkieng S.'s petition for writ of habeas corpus and order that he be released from custody.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Petitioner Bounkieng S.'s Petition for Writ of Habeas Corpus (Docket No. [1]) is **GRANTED**, as follows:

    a. If Petitioner was released subject to an order of supervision, Petitioner shall be released from custody subject to the conditions, if any, in such prior order of supervision.

    b. If Petitioner is being detained outside of Minnesota, Respondents shall **TRANSPORT** Petitioner to Minnesota and **RELEASE** Petitioner from custody immediately. Petitioner's release in Minnesota must occur **no later than 48 hours after the filing of this Order**.

c. If Petitioner is being detained in Minnesota, Respondents shall **RELEASE** Petitioner from custody as soon as practicable, and **no later than 48 hours from the filing of this Order**.

d. Given the potentially severe weather conditions in Minnesota, Respondents are **ORDERED** to coordinate with Petitioner's counsel to ensure that upon Petitioner's release, they are not left outside in inclement weather.  It is preferable to release Petitioner to counsel to ensure humane treatment.

e. Respondents must release Petitioner with all personal effects, such as driver's licenses, passports, or immigration documents.

f. The parties shall provide the Court with a status update concerning the status of Petitioner's release by **no later than 5:00 p.m. on March 23, 2026**. Further, the parties shall advise the Court whether any additional proceedings in this matter are required and submit any proposals for the scope of further litigation.

DATED: March 19, 2026  
at Minneapolis, Minnesota.

_____/s/ John R. Tunheim_____  
JOHN R. TUNHEIM  
United States District Judge